IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK EDWARD MCDERMOTT ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. 11-1369 |
| vs. ) | Judge Nora Barry Fischer |
| ) | |
| LINDA LEE MCDERMOTT, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM ORDER

AND NOW, this 29th day of December, 2011, the Court having received and considered the Respondent's Motion for Reconsideration (Docket No. [52]) and the Petitioner's response thereto (Docket No. [53]), IT IS HEREBY ORDERED that the motion [52] is DENIED for the following reasons.

Respondent's motion fails to reference any legal standard which would support her request for reconsideration. Indeed, the motion is completely devoid of any reference to case, statute, or even the record in this case.[1] Still, because of the sensitive nature of this case, the Court will address, in detail, its reasons for denial of the motion for reconsideration, stay, and appointment of a guardian *ad litem*. As to the request to tailor the transfer order, the Court observes that its transfer order, (Docket No. 51), is extremely detailed, and it is already tailored to ensure that all relevant authorities and supporting entities in Canada are made aware of the

---

[1] To date, neither party has requested preparation of the complete transcript. A portion of the transcript of the proceedings was produced for the Court's use, with copy to each party at the Court's order. (Docket No. 49). That portion concerned the Children's interview undertaken by the Court. The transcript, produced under seal, was needed for the Court's consideration in making its findings of fact and conclusions of law, which the Court read into the record on December 20, 2011. (*See* Docket No. 50).

1

Children's return in a timely fashion in order to ensure both their safety and that they will receive proper care.

Motions for reconsideration are granted sparingly "[b]ecause federal courts have a strong interest in finality of judgments." *Jacobs v. Bayha*, Civ. A. No. 07-237, 2011 WL 1044638, at *2 (W.D.Pa. Mar. 18, 2011) (quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F.Supp. 938, 943 (E.D.Pa. 1995)) (emphasis added). "Because of the interest in finality, at least at the district court level … the parties are not free to relitigate issues the court has already decided." *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D.Pa.1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992)). The purpose of a motion for reconsideration is "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Although she does not expressly state under which ground she seeks reconsideration, the Respondent has cited no change in controlling law or legal error and referred to no new evidence,[2] so the Court is left to assume that the Respondent believes the Court's opinion results

---

[2] Although the Court closed the record, (*see* Docket No. 50), the Respondent does allege that "there has already been an incident where the father was screaming at the mother over the phone concerning his desire for the transfer to take place sooner than she wanted it to take place." (Docket No. 52 at ¶ 8). However, this is merely allegation, and no evidence has been presented to support the allegation. Even if it were considered "evidence," the Court notes that an instance

2

in a manifest injustice. The manifest injustice ground for reconsideration has been characterized as "something of a catch-all basis for relief." MOORE'S FEDERAL PRACTICE, vol. 12 § 59.30[5][a][v] (3d ed. 2011). Typically, motions for reconsideration are granted where doing so will cure a clear error not otherwise accounted for by the other grounds for reconsideration. *See Sabatini v. Its Amore Corp.*, 2011 WL 6322497 (3d Cir. 2011) (motion for reconsideration properly granted where "'new' evidence was not new" but refusal to reconsider would result in manifest injustice); *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F.Supp. 1333, 1377 (D. Del. 1995) (granting motion to amend damage award to prevent manifest injustice when prevailing patentee failed to introduce proper calculations and court's determination applied wrong measure); *Atlantic States Legal Foundation, Inc. v. Karg Bros., Inc.*, 841 F.Supp. 51, 53 (N.D.N.Y. 1993) (grant of reconsideration motion proper to prevent obvious injustice); *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997) (motion for reconsideration properly granted where order denying enforcement of subpoena was based on court's erroneous understanding of relevance of information sought). Because the burden is on the movant to show that reconsideration is appropriate, *Max's Seafood Café*, 176 F.3d at 677, and she has made no showing that the Court's earlier opinion creates a manifest injustice, the Court finds the motion must be denied.

The Court incorporates into this Order its findings of fact and conclusions of law, which were read into the record on December 20, 2011. (*See* Docket No. 50[3]). The Court prefaces its

---

of one spouse screaming at another does not present a grave risk of harm to the Children. *See Baxter v. Baxter*, 423 F.3d 363, 373 (3d Cir. 2005) (noting the two sets of cases where grave risk of harm has been applied).

[3] Due to the length of the testimony and argument offered in this case, and due to the limited means available to the parties, the Court has not yet ordered production of a final transcript. Therefore, all statements of fact are derived from the Court's findings of fact and conclusions of

analysis by observing, as the Court also did in its findings of fact and conclusions of law, that the Respondent bears the burden of showing grave risk *by clear and convincing evidence*. 42 U.S.C. § 11603(e)(2)(A); *Baxter*, 423 F.3d at 373. The Respondent has failed to meet this burden. Further, the Court emphasizes *once again* that it *does not decide the merits of the underlying custody dispute*. *See Karpenko v. Leendertz*, 619 F.3d 259, 263 (3d Cir. 2010) (citing *Yang v. Tsui*, 499 F.3d 259, 270 (3d Cir. 2007)) (noting that the Convention's purpose is not to resolve international custody disputes, but "to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases."). With these preliminary points in mind, the Court also observes that, due to the form of the Respondent's motion, the Court will address her arguments paragraph by paragraph.

In Paragraph 4, the Respondent expresses concern that the Court did not give the "proper weight" to certain facts or allegations in this case. Specifically, Respondent raises concerns over whether the Court's order will "separate the children completely from the natural mother," (Docket No. 52 at ¶ 4(a)), the impact and potential for abuse, (*id.* at ¶ 4(b)), and the Petitioner's marijuana use. (*Id.* at ¶ 4(c)).

None of these concerns merit reconsideration. First, the Court's ruling does not completely separate the Children from their mother. As this Court has repeatedly emphasized to Respondent, *this Court has made no final custody determination*. The Court has merely determined that Canada is the proper place for such an adjudication, which point was evidently recognized by the Respondent when she first filed for custody *in Canada*.

Moreover, Respondent has offered only argument, and no evidence, that there is some exceptional harm in separating the Children from her. In fact, without evidence – expert or

---

law, thus far only memorialized at Docket No. 50. The Court has requested a copy of the transcript for its own use. Given the holidays, it has not yet been produced.

otherwise – the Court would also have to consider the Respondent's kidnapping of her children, which completely separated them from their natural father in July of 2011 in addressing this argument.[4] By their nature, cases brought under the Hague Convention necessarily separate children from one parent or the other, unless the removing parent returns to the location of habitual residence. The Respondent would be able to return to Canada pending determination of the custody dispute, but for her refusal to follow the Canadian Court's orders, which resulted in the issuance of a warrant for her arrest. (*See* Docket No. 28 at ¶ 32) (joint stipulation acknowledging that warrant was issued for the Respondent's arrest when she was held in contempt of the June 29, 2011 Order of the Ontario Court of Justice).

As to Paragraphs 4(b) and (c), the Court has fully considered these points. While the Respondent continues to argue that the Petitioner abuses the Children, both the Petitioner and Respondent have confirmed that there are many people in Canada who will be involved with the Children – from their teachers and therapists at school, to their counselors and therapists at Pathways, to the Children's Aid Society ("CAS") and the Court personnel that will be participating in the actual custody dispute in Canada.[5] Moreover, the Respondent's assertions of

---

[4] Indeed, the lesson that Respondent taught her children in absconding with them – e.g. blatant disregard for the rule of law – is something that gives this Court some concern.

[5] On December 28, the Court received correspondence from counsel for Petitioner, with a copy forwarded to counsel for the Respondent. This correspondence informed the Court that: the Children's schools had been contacted and were ready for their return; Petitioner's Canadian counsel had informed CAS that the Children were being returned to Canada; Petitioner's Canadian counsel had informed the Ontario Court of Justice of the Children's return; Pathways had been contacted and advised of the Children's return; and that Petitioner had contacted the Family Counseling Centre regarding further treatment for the Children. Counsel for Respondent has not challenged any of these facts. Accordingly, it appears to the Court that Petitioner has complied with the relevant portions of the Court's December 20 Order in a timely fashion and has demonstrated to this Court that a significant support network not only exists, but is already prepared for the Children's return. Moreover, Respondent is represented by counsel in Canada, and said counsel will presumably take steps to ensure the Children's safety in Canada.

abuse are directly contradicted by the fact that CAS conducted an investigation into the alleged abuse and found no evidence of same. (*Id.* at ¶ 29; Docket Nos. 44-23; 44-30). The presence of this support network, along with the findings from the CAS investigation, assuages the Court's concerns over the possibility of future abuse,[6] of Respondent's alleged suicide threats,[7] and the "significant amounts of expert attention" the Children require. As far as the allegations of marijuana use, the Petitioner has admitted that he uses marijuana, on occasion. To the Court, the evidence presented does not indicate that the Petitioner's marijuana use is any more dangerous to the Children than, say, a parent who has a drink or cigarette every now and again. Further, no evidence has been produced that shows that the Petitioner smoked marijuana around the Children or that the Children will be put at grave risk by the Petitioner's marijuana use. Without such a showing, the Petitioner's use of this drug is more appropriately considered by the Canadian court in the custody dispute.[8]

As to Paragraph 5, the Court has implicitly rejected the Respondent's argument and found that the Petitioner was the more credible witness of the two parents.[9] The Court does not

---

[6] In *Clarke v. Clarke*, 2008 WL 2217608, *7 (E.D.Pa. 2008), the court relied on an investigation into allegations of abuse performed by Australian authorities. The Court sees no reason to question the reasoning in that case, and will likewise rely on similar evidence, the CAS investigation, in this case.

[7] The Court observes that the best evidence produced as to the Petitioner's alleged suicide threats is a solitary text message quoting Pink Floyd's "Goodbye Cruel World." Judging a song by its title is tantamount to judging a book by its cover. The Court takes judicial notice that this song *is not* about suicide, but instead about blocking oneself off from society – in the album, it refers to a character (named Pink Floyd) building the album's namesake – The Wall – around himself to achieve isolation.

[8] The Court would note here that it does not approve of Petitioner's use of marijuana. It does not, however, believe that mere use of the drug gives rise to a grave risk of harm.

[9] The Court, as finder of fact in this case, may determine the credibility of witnesses. *See Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 147 n.2 (3d Cir. 1999) (citing *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995)). "Like any factfinder, [a district court] can

believe, in view of the entire record, that this finding results in a manifest injustice. The apparent reasoning behind Paragraph 5 is that, because the Petitioner may not have been entirely truthful in his testimony, the Court should accept the Respondent's assertions as fact under the doctrine "false in one, false in all." However, as detailed in the Court's findings, the Respondent's tale was rife with inconsistencies of its own. Thus, Respondent's apparent reasoning cuts both ways. Moreover, the Court would once again point out that, even if the Court accepted the Respondent's assertions, the Respondent would still fail to meet the clear and convincing standard, which requires "evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true." MODEL CIV. JURY INSTR. 3RD CIR. 1.11 (2011). Whether the Petitioner may have threatened suicide once does not mean that he *will* commit suicide. Nor do his reasons for returning to Canada place the Children at grave risk of harm. There is no manifest injustice here, as there is no evidence that even approaches the clear and convincing standard.

At Paragraph 6, the Respondent argues that the Court should have appointed a guardian *ad litem* in accord with Pennsylvania custody law. (Docket No. 52 at ¶ 6). Yet, Respondent has not pointed the Court to any legal authority that might inform the Court's decision. Although the Court tires of reiterating the point, it will: *this Court does not address the merits of the underlying custody dispute*. The Court has simply found that *Canada* is the appropriate jurisdiction to address the custody dispute. The Court does not see any reason to appoint a guardian *ad litem*. *Accord Clarke v. Clarke*, 2008 WL 2217608, *4 at n.3 (E.D. Pa. 2008) (finding, in a Hague case nearly identical to the one at bar, that Pennsylvania guardian law did

---

accept some parts of a party's evidence and reject others. It may also, like any factfinder, assess credibility in light of the maxim, *falsus in uno, falsus in omnibus*, defined as 'false in one, false in everything.'" *Porter v. King*, 2009 WL 2407840, *8 n.8 (W.D.Pa. Aug. 3, 2009) (quoting *Bennun v. Rutgers State University,* 941 F.2d 154, 179 (3d Cir. 1991)).

not apply).¹⁰  Finally, the Court would observe that a guardian *ad litem* (or equivalent thereto) may be appointed in Canada, where the actual merits of the custody dispute should be addressed and where such a guardian would actually have a relevant position with respect to the dispute.

As to the Respondent's passing request for a stay, (Docket No. 52 at ¶ 7), the Court finds the request inappropriate, and will therefore deny the same.  Rule 62(c) of the Federal Rules of Civil Procedure provides that a court may stay an order pending appeal.  A court facing a motion to stay pending appeal must consider the following factors: (1) whether the applicant for stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent the requested relief; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) the public interest.  *F.T.C. v. Equitable Resources, Inc.*, 2007 WL 1500046, *3 (W.D. Pa. 2007) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Jackson v. Danberg*, 656 F.3d 157, 162 (3d Cir. 2011).

The Court's findings issued on December 20, 2011 and further discussed herein make clear that the Respondent has not made a strong showing that she is likely to succeed on the merits.  Moreover, the Respondent will not be irreparably injured if this Court denies her request.  As expressed repeatedly, she will still be able to pursue her rights in the custody dispute in Canada; this Court's decision is not determinative as to the actual outcome of the custody dispute, nor is "[a]n appeal from a decision under the Hague Convention rendered moot because the child is returned to his or her place of habitual residence."  *See Foster v. Foster*, 2009 WL 3064738, *1 (W.D.Pa. 2009) (citing *Whiting v. Krassner*, 391 F.3d 540, 545 (3d Cir. 2004)).  No other interested party will be injured by a denial of the motion to stay.  *Id.* at *2.  Finally, the

---

¹⁰ The Court would also note that it believes that the value of a guardian is significantly reduced where, as here, the Court believes that undue influence over the Children has been exercised on behalf of the Respondent.

8

public interest weighs in favor of a denial because "[t]he very purpose of the Hague Convention is 'to secure the *prompt* return of children wrongfully removed to or retained in' a foreign jurisdiction." *Id.* (citing Hague Convention, preamble) (emphasis from case). Thus, all four factors weigh against the Court's grant of the stay. Moreover, transfer at this time permits the Children time to settle in and start the second semester of schooling in Canada on January 9, 2012.

Because the Court has addressed all the arguments in the Respondent's motion for reconsideration, the Court will not provide the relief requested in the Respondent's motion. Accordingly, the Court's December 20, 2011 Order requiring the return of the Children stands. (*See* Docket No. 51). In light of this Memorandum Order,

IT IS FURTHER ORDERED that **the transfer shall occur on December 30, 2011 at the Respondent's home at 210 Stewart Place, New Castle, Pennsylvania, 16101 between the hours of 10:00 a.m. and 12:00 p.m**.

IT IS FURTHER ORDERED that the Respondent shall return to Petitioner or his representative the Children's Canadian health cards.

IT IS FURTHER ORDERED that the U.S. Marshals shall either send a Marshal to the Respondent's home, to be present during the time of transfer to ensure that the transfer occurs safely, or the Marshals shall coordinate with local law enforcement to ensure that a police officer is available for same.

IT IS FINALLY ORDERED that the Court will provide to the assigned U.S. Marshal the Children's birth certificates, which are currently in the Court's possession, so that said certificates may be returned to the Petitioner or Petitioner's representative at the time of the transfer.

/s Nora Barry Fischer
Nora Barry Fischer
U.S. District Judge

cc/ecf: all counsel of record